IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                              )
JOHN S. ILAE,                 )
                              )
              Plaintiff,      )
                              )
        vs.                   )   Civ. No. 12-00316 ACK-KSC
                              )
RODNEY TENN, LOUIS M. KEALOHA, )
CITY AND COUNTY OF HONOLULU,  )
JOHN DOES 1-25,               )
                              )
              Defendants.     )
_____)
```

<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE
12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

<u>PROCEDURAL BACKGROUND</u>

On June 1, 2012, Plaintiff John S. Ilae ("Plaintiff")
filed a Complaint against Defendants Rodney Tenn, Louis M.
Kealoha, and the City and County of Honolulu ("County")
(collectively, "Defendants").  ECF No. 1.  Plaintiff's Complaint
contains the following allegations:  Count I - violations of 42
U.S.C. § 1983, Count II - Negligent Training/Supervision, Count
III - Negligence, and Count IV - Negligent Infliction of
Emotional Distress.  <u>Id.</u>  On August 6, 2012, Defendants filed a
Motion to Dismiss Plaintiff's Complaint.  ECF No. 4.  Upon
Defendants' request, the Court stayed the Motion pending a
summary judgment order issued by Judge Kobayashi that potentially

-1-

could have affected Defendants' Motion.[1/]   ECF No. 18.   On June

25, 2013, Defendants reactivated the Motion to Dismiss.   ECF No.

20.   Plaintiff filed his Opposition on July 5, 2013.   ECF No. 23.

Defendants filed their Reply on July 15, 2013.   ECF No. 24.   On

July 29, 2013, this Court held a hearing regarding this matter.

ECF No. 25.

### FACTUAL BACKGROUND[2/]

According to the standard for deciding a Federal Rule

of Civil Procedure ("Rule") 12(b)(6) motion to dismiss, the Court

uses Plaintiff's Complaint to establish the factual background to

decide this motion.   See Sateriale v. R.J. Reynolds Tobacco Co.,

697 F.3d 777, 783 (9th Cir. 2012).

On or about January 1, 2010, the Honolulu Police

Department ("HPD") received allegations from certain individuals

that Plaintiff assaulted three persons in Waimanalo, Hawaii

earlier that morning.   Compl. at 5, ¶ 14, ECF No. 1.   Later that

same day, the police allegedly verified the existence of the

injuries suffered from one of the three complaining witnesses.

Id. at 5, ¶ 15.   On or about January 10, 2010, the assault case

---

[1/]   The order issued by Judge Kobayashi did not in fact
affect the issues presented in the instant Motion to Dismiss.
Smith v. Davidson et al., Civ. No. 11-00498 LEK-RLP, 2012 WL
996890 at *10-14 (D. Haw. 2013).

[2/]   The facts as recited in this Order are for the purpose
of disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

was assigned to Defendant Tenn for further investigation.  Id. at
5-6 ¶ 16.  In March of 2010, the three complaining witnesses
alleged that Plaintiff was the perpetrator of the assaults and
identified Plaintiff from photo line ups.  Id. at 6, ¶ 17.  On or
about April 1, 2010, the police confirmed the injuries suffered
by one of the complaining witnesses after the witness previously
told police that he had not sought medical treatment for his
injuries.  Id. at 6, ¶ 18.

On June 2, 2010, without first obtaining an arrest
warrant, Defendant Tenn instructed police officers to arrest
Plaintiff on three counts of assault in the second degree.
Compl. at 6, ¶ 19, ECF No. 1.

The following events occurred on June 9, 2010.  Around
7:30 a.m., the police arrested Plaintiff, transported him to the
Kailua station, and notified Defendant Tenn of Plaintiff's
arrest.  Compl. at 6, ¶ 20, ECF No. 1.  Around 8:45 a.m., the
police administered an intoxilyzer test to Plaintiff.  Id. at ¶
21.  Defendant Tenn arrived at the Kailua police station around
11:30 a.m.  Id. at ¶ 22.  The police continued to detain
Plaintiff while Defendant Tenn waited for several other suspects
to turn themselves in at the Kailua station.  Id. at ¶ 23.

Around 1:40 p.m., Plaintiff was transferred to the
Honolulu police station.  Compl. at 7, ¶ 24.  Defendant Tenn
traveled from the Kailua station to the Honolulu station around

-3-

2:20 p.m.  Id. at ¶ 25.  After Defendant Tenn and the arresting officer submitted the appropriate paperwork, the Honolulu District Court issued a probable cause determination for Plaintiff's warrantless arrest for assault in the second degree around 4:30 p.m.  Id. at ¶ 26.  Defendant Tenn advised Plaintiff of his constitutional rights around 10:30 p.m. and continued to detain Plaintiff through the rest of the evening after Plaintiff refused to make any statements.  Id. at ¶ 27.

On June 10, 2010, no later than 7:45 a.m., Defendant Tenn was informed of the bail on the charges for which Plaintiff had been arrested.  Compl. at 7, ¶ 28.  Defendant Tenn continued Plaintiff's detention and charged him by felony information around 6:00 p.m.  Id. at ¶ 29.  Around 9:15 p.m., Plaintiff was released on bail nearly thirty-eight hours after his initial arrest.  Id. at ¶ 30.

### STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011).

-4-

For a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012) (citation omitted).  The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  However, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that a "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr, 652 F.3d at 1216.

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556–57).  However, in considering a motion to dismiss, "the court is not deciding

-5-

whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted." <u>Tedder v. Deutsche Bank Nat. Trust Co.</u>, 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) (citing <u>Twombly</u>, 550 U.S. at 563 n.8).

The Court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1079 (9th Cir. 2012). Leave to amend "is properly denied, however, if amendment would be futile." <u>Carrico v. City & County of S.F.</u>, 656 F.3d 1002, 1008 (9th Cir. 2011).

<u>**DISCUSSION**</u>

**I.  Whether This Court Should Convert Defendants' Motion to Dismiss Into a Motion for Summary Judgment Under Rule 12(d)**

Plaintiff attaches evidence to his Opposition in the form of a County memorandum regarding the County's alleged policy and practice of detaining an arrestee for up to 48 hours after a warrantless arrest ("48 Hour Rule"). Plntf.'s Opp. Ex. 2, ECF No. 23-2. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 668 (9th Cir. 2001); <u>see also</u> <u>Smith v. Davidson</u>, Civ. No. 11-00498 LEK-RLP, 2012 WL 996890 at *9 (D. Haw. 2011). Under Rule 12(d), if

"matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss must be converted into a motion for summary judgment under Rule 56.  If the Court converts a motion to dismiss into a motion for summary judgment, then "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

While there are exceptions to the general rule, none of the exceptions apply to the instant case.  Plaintiff's Exhibit 2 is not a document "whose contents are alleged in a complaint and whose authenticity no party questions."  See Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012).  Exhibit 2 also does not fall within the judicial notice exception because the document presents facts that are "subject to reasonable dispute."  See U.S. v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003).  In this case, Plaintiff attempts to use Exhibit 2 to establish the County's policy and practice of using the 48 Hour Rule.  However, Plaintiff alleges that he was arrested and detained on June 9, 2010, but the Court observes that Exhibit 2 is dated January 20, 2011.  See Plntf.'s Opp. Ex. 2, ECF No. 23-2.  Thus, Exhibit 2 does not indicate that it represents the policy in effect in 2010 when Plaintiff was detained.  Accordingly, the Court exercises its discretion and declines to

examine Plaintiff's Exhibit 2 or convert Defendants' Motion to Dismiss into a motion for summary judgment.

## II.  Whether Plaintiff's First Cause of Action - 42 U.S.C. § 1983 States a Claim Upon Which Relief Can Be Granted

In his First Cause of Action, Plaintiff makes numerous claims against various Defendants that his constitutional rights were violated.  Although the Complaint is far from clear regarding the specific constitutional rights that have been violated, the Court will address the constitutional rights discussed in the Complaint and the parties' briefs.[3/]

### A. Whether Plaintiff Sufficiently Pleads a Violation of a Constitutional Right

#### 1. The Alleged Delay Regarding Plaintiff's Probable Cause Determination

Defendants argue that Plaintiff fails to sufficiently allege a claim under the Fourth Amendment because a probable cause determination was made within 48 hours of Plaintiff's warrantless arrest.  Def.'s MTD at 4-7, ECF No. 4-1.

The Fourth Amendment requires "a judicial determination of probable cause as a prerequisite to the extended restraint of liberty following arrest."  Gerstein v. Pugh, 420 U.S. 103, 114,

---

[3/]    In the event Plaintiff decides to file an amended complaint to address the issues discussed in this order, the Court instructs Plaintiff to clarify the specific federal and state constitutional provisions at issue in this litigation.

-8-

95 S. Ct. 854, 863, 43 L. Ed. 2d 54 (1975).  As explained by the
Supreme Court, "warrantless arrests are permitted but persons
arrested without a warrant must promptly be brought before a
neutral magistrate for a judicial determination of probable
cause."  Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 53, 111
S. Ct. 1661, 1668, 114 L. Ed. 2d 49 (1991) (citing Gerstein, 420
U.S. at 114, 95 S. Ct. at 863).  When examining the promptness
requirement, the Court stated that a jurisdiction that provides
"judicial determinations of probable cause within 48 hours of
arrest" generally complies with the requirement.  McLaughlin, 500
U.S. at 56, 111 S. Ct. at 1670.  As a result, "such jurisdictions
will be immune from systemic challenges."  Id., 500 U.S. at 56,
111 S. Ct. at 1670.

        Furthermore, the Court in McLaughlin specifically
acknowledged that "the Fourth Amendment does not compel an
immediate determination of probable cause upon completing the
administrative steps incident to arrest."  McLaughlin, 500 U.S.
at 53-54, 111 S. Ct. at 1668.  There is flexibility in the rule
to encourage States to "experiment and adapt" regarding arrest
and processing procedures.  Id.  The Court specifically rejected
the Ninth Circuit's interpretation that a probable cause
determination "be made as soon as the administrative steps
incident to arrest were completed."  Id., 500 U.S. at 54, 111 S.
Ct. at 1669.

However, the Court also held that, when examining an individual's case of unconstitutional detention, a delay of the probable cause determination is not constitutionally permissible merely because it was provided within 48 hours.  McLaughlin, 500 U.S. at 56-57, 111 S. Ct. at 1670.  A probable cause determination conducted within the 48 hour time frame may still violate the Constitution if the determination was delayed unreasonably.  Id.  An individual who is provided a probable cause determination within 48 hours has the burden of establishing that any complained of delay was unreasonable. McLaughlin, 500 U.S. at 57, 111 S. Ct. at 1670.  Regarding the concept of unreasonable delay, the Court provides the following guidance.

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

Id., 500 U.S. at 56-57, 111 S. Ct. at 1670.

In this case, Plaintiff alleges that "the policy and/or practice of permitting officers to arrest persons without a warrant and unnecessarily detaining them for up to 48 hours

without formal charges and/or admission to bail is constitutionally deficient." Compl. at 9, ¶ 35, ECF No. 1. As currently pled, Plaintiff cannot bring a systemic challenge to the County's Fourth Amendment probable cause procedures under McLaughlin. The County is permitted to make warrantless arrests, and the 48-hour timeframe in the alleged policy ("48 Hour Rule")[4/] generally complies with the promptness requirement. See McLaughlin, 500 U.S. at 56, 111 S. Ct. at 1670; Jones v. City of Santa Monica, 382 F.3d 1052, 1055 (9th Cir. 2004); Jones v. Lowndes Cnty., Miss., 678 F.3d 344, 350 (5th Cir. 2012).

Plaintiff cites to Taylor v. Keala, S.P. No. 3532 (Haw. Cir. 1973), a case in which a Hawaiʻi circuit court held that the 48 Hour Rule is unconstitutional. Plntf.'s Opp. at 7, ECF No. 23. However, this case was issued decades before McLaughlin and therefore is not controlling law as to the Fourth Amendment's requirements. Likewise, Plaintiff's reliance on Kanekoa v. City and Cnty. of Honolulu, 879 F.2d 607, 612 (9th Cir. 1989) is misplaced because Kanekoa was issued before the Supreme Court's McLaughlin decision. Accordingly, the Court GRANTS Defendants'

---

[4/]   Plaintiff at various points in his brief appears to use the term "48 Hour Rule" to allude to either the police practice of using 48 hours as a benchmark or Haw. Rev. Stat. § 803-9. H.R.S. § 803-9 states, inter alia, as follows:   "It shall be unlawful in any case of arrest for examination . . . [t]o fail within forty-eight hours of the arrest of a person on suspicion of having committed a crime either to release or to charge the arrested person with a crime and take the arrested person before a qualified magistrate for examination."

Motion with respect to Plaintiff's Fourth Amendment "unreasonable seizure" claim based upon the County's alleged systemic policy composed of the 48 Hour Rule.   However, the Court grants Plaintiff leave to amend because it is not clear that amendment would be futile.

Regarding Plaintiff's individual claim for the delays specific to his detention, Plaintiff barely alleges sufficient facts to present a plausible claim that Officer Tenn's 9-hour delay between Plaintiff's arrest and the probable cause determination was unreasonable.[5]   Nonetheless, Plaintiff's individual challenge of his detention will not be dismissed because he does allege that the detention was "improperly prolonged."   Compl. at 8, ¶ 31, 9, ¶ 35 & 37.   Accordingly, the Court DENIES Defendant Tenn's[6] Motion to Dismiss with respect to

---

[5]   Plaintiff alleges no facts that Defendants delayed in order to gather "additional evidence to justify the arrest," were motivated by "ill will against the arrested individual," or that the delay was "for delay's sake."   See McLaughlin, 500 U.S. at 56-57, 111 S. Ct. at 1670.   Instead, Plaintiff's allegations are composed of administrative steps and permissible delays (intoxilyzer test, transportation between facilities, processing other suspects, probable cause paperwork).   Compl. at 6-7 ¶¶ 20-26, ECF No. 1; see McLaughlin, 500 U.S. at 56-57, 111 S. Ct. at 1670 (holding that "transporting arrested persons from one facility to another" and "obtaining the presence of an arresting officer who may be busy processing other suspects" may cause permissible delays); see also U.S. v. Guthrie, 265 Fed. Appx. 478, 479-480 (9th Cir. 2008) (delay from processing other suspect is permissible under McLaughlin).

[6]   The Court will discuss the County's and Kealoha's liability in Sections II.B and II.D.   See infra at 23-27 and 28-
(continued...)

Plaintiff's individual Fourth Amendment unreasonable seizure claim.

### 2. The Alleged Delay Between Plaintiff's Arrest and Formal Charges

Plaintiff also alleges that Defendants violated his constitutional rights by detaining Plaintiff without formal charges.  Defendants argue that the proper time period to evaluate is the probable cause determination, not the "formal charge."  Defs.' MTD at 6, ECF No. 4.  The Court observes that Plaintiff and Defendants appear to be referring to different phases of the detention procedure.  While Defendants' Ninth Circuit case refers to a formal complaint filed with a judge for a probable cause determination, Plaintiff's Complaint appears to refer to the government's communication to him of the offense he allegedly committed.  Compare U.S. v. Bueno-Vargas, 383 F.3d 1104, 1107 (9th Cir. 2004) with Compl. at 7 ¶ 29, ECF No. 1.

Plaintiff cites to Ginoza v. United States, which held that the plaintiff arrestee should have been arraigned[7]

---

[6]  (...continued)
31, respectively.

[7]  The Court observes that an arraignment is not the same as a formal charge.  An "arraignment" is defined as the "initial step in a criminal prosecution whereby the defendant is brought before the court to hear the charges and to enter a plea."  Black's Law Dictionary 123 (9th ed. 2009).  Under the Hawai'i Rules of Criminal Procedure, "a defendant charged with a felony shall not be called upon to plead" but instead the defendant may
(continued...)

immediately after he was arrested and searched.  279 F.2d 616, 621 (9th Cir. 1960).  However, the Ninth Circuit in Ginoza reached its holding by relying upon Federal Rule of Criminal Procedure 5(a).  Id. at 620.  In U.S. v. Alvarez-Sanchez, the Supreme Court held, inter alia, that the "delay" standard under Fed. R. Crim. Proc. 5(a) applied to federal offenses, not state crimes.  511 U.S. 350, 358 (1994).  In this case, Ginoza is not applicable because Plaintiff was arrested for a state crime.  See Compl. at 7 ¶ 26, ECF No. 1.

Due in part to Plaintiff's failure to articulate the specific constitutional right violated, the Court assumes that Plaintiff's claim of delay of formal charges should be analyzed under the Sixth Amendment speedy trial clause instead of a due process claim.  See Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that "substantive due process" should not be used if there is an "explicit textual source of constitutional protection").

The Sixth Amendment appears "to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him."  U.S. v. Marion, 404 U.S. 307, 320, 92 S. Ct. 455, 460, 30 L.Ed.2d 468 (1971).  In Marion, the Supreme

---

[7]/ (...continued)
be "indicted or charged by information."  Haw. R. Crim. Proc. 5(c).

Court held that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." 404 U.S. 307, 320 (1971). Accordingly, delays after arrest but before formal charges are filed have been analyzed under the Sixth Amendment. See U.S. v. Traylor, 578 F.2d 108, 109 (5th Cir. 1978) (holding that Sixth Amendment applies to post-arrest, pre-indictment delay); U.S. v. Hillegas, 578 F.2d 453, 460 (2d Cir. 1978); Quinn v. Roach, 326 Fed. Appx. 280, 290 (5th Cir. 2009).

For a Sixth Amendment speedy-trial claim, the Court first examines if the length of the delay is "presumptively prejudicial"; if the delay does not meet this requirement, then "there is no necessity for inquiry into the other factors that go into the balance." Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972). The delay alleged in this case, namely the time between Plaintiff's arrest and formal charge, consisted of around 35 hours. Compl. 6-7, ¶¶ 20, 29, ECF No. 1. Plaintiff does not allege when the charges were dismissed.[8/] See generally, Compl., Plntf.'s Opp. at 5, ECF No. 23. The delay alleged in this case is not presumptively prejudicial, as the

---

[8/] Plaintiff in his Opposition states that he "plead [sic] "no contest" to reduced misdemeanor charges and his pleas were deferred after which the charges ultimately were dismissed altogether." Plntf.'s Opp. at 5, ECF No. 23.

-15-

Supreme Court and other courts of appeals have held that a delay
of less than one year will "rarely qualify as "presumptively
prejudicial" for purposes of triggering the <u>Barker</u> inquiry."
<u>Cowart v. Hargett</u>, 16 F.3d 642, 646 (5th Cir. 1994) (citing
<u>Doggett v. United States</u>, 505 U.S. 647, 652 n. 1, 112 S. Ct.
2686, 2691 n. 1, 120 L.Ed.2d 520 (1992)), <u>U.S. v. Reynolds</u>, 231
Fed. Appx. 629, 630 (9th Cir. 2007) ("Courts have generally found
postaccusation delay 'presumptively prejudicial' at least as it
approaches one year."). Accordingly, Plaintiff fails to state a
Sixth Amendment speedy-trial claim.[9]

      Although the Court concludes that Plaintiff's claim of
delay after his arrest should be analyzed under the Sixth
Amendment, the Court also analyzes one other due process theory
used in the Ninth Circuit. In <u>Oviatt</u>, the Ninth Circuit found
that state law may create a liberty interest protected by the
Fourteenth Amendment. 954 F.2d 1470, 1474 (9th Cir. 1992). The
plaintiff in that case had been arrested, but due to a defect in
pretrial procedures, he remained incarcerated for 114 days before
being arraigned. <u>Id.</u> at 1473. The Ninth Circuit found that an

---

[9] The Court notes that, while Plaintiff complains of a
prolonged detention of several hours, he does not contest the
probable cause determination of the Honolulu District Court. <u>See
generally</u>, Compl., ECF No. 1. To the extent that Plaintiff
attempts to allege a due process violation for his detention, the
Supreme Court has stated that "a detention of three days" did not
amount to a deprivation of due process when the government had
probable cause for the arrest. <u>Baker v. McCollan</u>, 443 U.S. 137,
145, 99 S. Ct. 2689, 2695 (1979).

Oregon statute created a liberty interest by mandating that a defendant's arraignment "shall be held during the first 36 hours of custody."[10/]   Id. at 1475.

When examining whether a state law creates a liberty interest, the courts must examine if the laws place "substantive limitations on official discretion."  Oviatt, 954 F.2d at 1474. "The state statutes in question must do more than merely channel administrative discretion; they must be 'explicitly mandatory.'"  Id.

In the present case, the applicable Hawaiʻi statute provides that "It shall be unlawful in any case of arrest for examination . . . To fail within forty-eight hours of the arrest of a person on suspicion of having committed a crime either to release or to charge the arrested person with a crime and take the arrested person before a qualified magistrate for examination."  H.R.S. § 803-9.  The Court need not determine whether the statute actually creates a liberty interest because assuming arguendo that it does, Plaintiff has not alleged facts demonstrating a violation of the statute.  In this case, Plaintiff was released within 48 hours in accordance with the statute's requirements.  Compl. at 7, ¶ 30, ECF No. 1.

---

[10/] While the facts in the Oviatt case involved the time frame before arraignment; the general holding that states may create liberty interests protected by the Fourteenth Amendment is applicable to the case before this Court.

-17-

Additionally, the Court notes that the purported liberty interest provided by the state does not mandate a formal charge within 48 hours.  Plaintiff does not present any cases indicating that the state's statute is unconstitutional.  Accordingly, because the delay in presenting formal charges as alleged by Plaintiff does not appear to violate the due process clause, the Court GRANTS Defendants' Motion with respect to Plaintiff's § 1983 claim regarding the delay in bringing formal charges.  However, the Court grants Plaintiff leave to amend because at this point in time the Court does not conclude that amendment would be futile.

### 3. The Alleged Delay in Plaintiff's Admission to Bail

Regarding bail, the Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments be inflicted."  U.S. Const. amend. VIII.  To prevail on a federal claim of excessive bail, Plaintiff must show that the conditions set on his bail were excessive in relation to the "valid state interests bail is intended to serve."  Galen v. Cnty. of Los Angeles, 477 F.3d 652, 660 (9th Cir. 2007).  Plaintiff has not alleged that his bail was excessive, only that his admission to bail was delayed by a few hours.  Compl. at 7, ¶ 30.  Several courts of appeals cases state that there is no federal constitutional right to post bail

-18-

immediately after arrest.[11/]  See Fields v. Henry County, Tenn.,
701 F.3d 180, 185 (6th Cir. 2012) ("There is no constitutional
right to speedy bail."); Woods v. City of Michigan City, Ind.,
940 F.2d 275, 283 (7th Cir. 1991) (Will, J., concurring) (holding
that plaintiff's constitutional rights were not violated by his
arrest and overnight detention because the Eighth and Fourteenth
Amendments do not guarantee "instant release for misdemeanors or
any other offense"); Cf. Collins v. Ainsworth, 382 F.3d 529, 545
(5th Cir. 2004) ("There is no right to post bail within 24 hours
of arrest.").

Other courts of appeals hold that a Fourteenth
Amendment liberty interest arises once bail has been set, and
that a delay may violate the due process clause.  Dodds v.
Richardson, 614 F.3d 1185, 1190 (10th Cir. 2010); see Campbell v.
Johnson, 586 F.3d 835, 840 (11th Cir. 2009) (holding in the
context of bail release that there is a "right to be free from
continued detention after it was or should have been known that
the detainee was entitled to release").  Thus, it appears that
while there is no Eighth Amendment right, Plaintiff has a
"cognizable legal theory" to support his claim that the delay in

---

[11/] It appears that the Ninth Circuit has not yet addressed
the issue of whether or not the federal constitution provides for
a right to speedy admission to bail.  See Farrow v. Lipetzky, No.
12-cv-06495-JCS, 2013 WL 1915700 at *22 (N.D. Cal. 2013)
(dismissing plaintiff's alleged Fourteenth Amendment claim
regarding a five to thirteen day delay between his arrest and
bail hearing for failure to state a claim).

his admission to bail after bail was set violates the due process clause of the Fourteenth Amendment.

Regarding any alleged delay between Plaintiff's arrest and the setting of his bail, Plaintiff does not cite any cases indicating that a delay of less than 48 hours between an arrest and the setting of bail violates the federal constitution.  See Plntf.'s Opp. at 6, ECF No. 23.  There are several cases indicating that the federal constitution does not require an immediate determination of bail.  See Farrow v. Lipetzky, No. 12-cv-06495-JCS, 2013 WL 1915700 at *22 (N.D. Cal. 2013) (dismissing plaintiff's alleged Fourteenth Amendment claim regarding a five to thirteen day delay between his arrest and bail hearing for failure to state a claim), Holder v. Town of Newton, et al., 2010 WL 432357 at *10-11 (D. N.H. 2010) (noting that a  right to an immediate bail hearing did not exist), Tate v. Hartsville/ Trousdale County, No. 3:09-0201, 2010 WL 4054141 at *8 (M.D. Tenn. 2010) (holding that a bail hearing held within 48 hours of arrest is presumptively constitutional).

However, as mentioned above, the Ninth Circuit in Oviatt v. Pearce held that a liberty interest protected by the Fourteenth Amendment may arise from the law of a state.  954 F.2d at 1474.  In this case, the Court must examine whether Hawaiʻi law regarding the admission to bail creates a "significant substantive reduction in decision-making" for officials or

"create[s] an imperative that mandates action unless certain
clearly-defined exceptions are found to apply." <u>Chaney v.
Stewart</u>, 156 F.3d 921, 925 (9th Cir. 1998).

Under Hawai'i law, an arrestee may be "admitted to bail
before conviction as a matter of right" provided that bail is
allowable.[12/]  Haw. Rev. Stat. § 804-4.  In Plaintiff's case, he
could be admitted to bail because his charge was for assault in
the second degree, a class C felony that is not considered a
serious crime.  H.R.S. § 804-3(a).

Hawai'i Rule of Penal Procedure 5(a)(1) states that "An
officer making an arrest under a warrant shall take the arrested
person without unnecessary delay before the court having
jurisdiction, or, for the purpose of admission to bail, before
any judge or officer authorized by law to admit the accused
person to bail."[13/]  Hawai'i Rules of Penal Procedure 5(a)(1)
(2010).  The Hawai'i Supreme Court has held that a person who
could be admitted to bail has "a right to release without
unnecessary delay upon payment of bail."  <u>State v. Perez</u>, 111

---

[12/] Bail may be denied where the charge is for a serious
crime.  H.R.S. § 804-3 (b).  The definition of a "serious crime"
is "murder or attempted murder in the first degree, murder or
attempted murder in the second degree, or a class A or B felony,"
with a few exceptions that are not relevant to the present case.
Haw. Rev. Stat. § 804-3.

[13/] The Hawai'i Rule of Penal Procedure 5(a)(1) has remained
substantively the same throughout the events giving rise to this
lawsuit.  Hawai'i Rules of Penal Procedure 5(a)(1) (2010).

Hawai'i 392 (2006) (citing Hawaii Rules of Penal Procedure Rule 5(a)(1)). "What constitutes 'unnecessary delay' requires the consideration of all the facts and circumstances at the time." Id. at 396.[14/]

The Court concludes that Hawai'i law regarding the right to admission to bail creates an imperative that mandates officers to admit an accused person to bail without unnecessary delay, provided that the person qualifies for bail. See Oviatt, 954 F.2d at 1475 (holding that a statute created a "liberty interest in freedom from incarceration without speedy pretrial procedures" by stating "Except for good cause shown . . . if the defendant is in custody, the arraignment shall be held during the first 36 hours of custody"). The law does not confer discretion on the officers to decide whether to admit the accused to bail, nor do the officers have unfettered discretion to decide when to do so.[15/] As a result, if bail is available, the accused has a legitimate expectation of being released on bail after a speedy

---

[14/] The Hawai'i Supreme Court also held that, while the probable cause determination for a warrantless arrestee should be made "as soon as practicable," the admission to bail must be made "without unnecessary delay." Perez, 111 Hawai'i at 396 n.4. Accordingly, it appears that the standard used to determine unconstitutional delay for admission to bail possibly differs from the probable cause determination standard.

[15/] While the term "unnecessary delay" is not clearly defined, the Court observes that the statute in Oviatt used similar language, i.e. "[e]xcept for good cause shown," to modify the timeframe to complete the action mandated. Oviatt, 954 F.2d at 1474.

bail procedure.  Accordingly, the Court concludes that Plaintiff may have a plausible claim that Defendants violated his federal Fourteenth Amendment due process rights for delay in admission to bail.  However, for the reasons discussed in Sections II.B, II.C, II.D, and III, the Court dismisses Plaintiff's federal Fourteenth Amendment due process claim.  See infra at 23-36.

**B. Whether Plaintiff Alleges a *Monell* Claim Against the County**

Under Monell, a plaintiff must plead that a county has a "deliberate policy, custom, or practice that was the "moving force" behind the constitutional violation." Galen v. Cnty. of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007).  A plaintiff may allege municipal liability in the following three ways.  "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."" Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).  "Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy." Id. "Third, the plaintiff may prove that an official with final

policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Id.

In this case, Plaintiff alleges that the County has a "policy and/or practice" of "permitting officers to arrest persons without a warrant and unnecessarily detaining them for up to 48 hours without formal charges and/or admission to bail." Compl. at 9 ¶ 35, ECF No. 1. Such allegations appear to refer to the first theory of liability noted above. However, Plaintiff does not allege any facts indicating that the policy is a formal policy. See Compl. at 9, ¶ 31-36, ECF No. 1. Neither does Plaintiff sufficiently allege the existence of an "informal policy" or practice because Plaintiff has not alleged facts regarding "widespread practices" or "repeated constitutional violations." See Hunter v. Cnty. of Sacramento, 652 F.3d 1225, 1234 (9th Cir. 2011). Plaintiff only alleges a single violation that Officer Tenn delayed Plaintiff's detention (see Compl. at 5-7, ECF No. 1.), which is not sufficient to establish an informal policy or practice. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (holding that liability for a practice or custom may not be based on "isolated or sporadic incidents").

Plaintiff's allegations also do not fall within the second or third theories of liability. Regarding the second theory, the Complaint does not contain allegations that Officer Tenn, the individual alleged to be responsible for violating

-24-

Plaintiff's rights, had final policy-making authority.  See generally, Compl., ECF No. 1; Gillette, 979 F.2d at 1346.  For the third theory, although Plaintiff argues in his Opposition that Defendant Kealoha had final policy-making authority, the Complaint does not contain allegations that Kealoha knew, let alone ratified, the decision by Officer Tenn to detain Plaintiff. Id.; see Gillette, 979 F.2d at 1346.  Accordingly, Plaintiff has not sufficiently pled the existence of a municipal policy, practice, or custom that is responsible for the alleged violations of his constitutional rights.  See also AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (affirming dismissal of a § 1983 Monell claim when plaintiff alleged that the government "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the types of wrongs" related to "the custody, care and protection of dependent minors").[16]

---

[16] The Ninth Circuit also retired the pleading rule that, for Monell claims, a plaintiff could "set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom."  AE ex rel. Hernandez, 666 F.3d at 636.  Instead, the Ninth Circuit instituted the rule in Starr v. Baca, which requires as follows: (1) "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense or discovery and (continued...)

Defendant County also argues that Plaintiff fails to state a claim for failure to properly train its police officers. The County may be found liable under a "failure to train" theory when the "failure to train amounts to deliberate indifference to the rights of persons" who come into contact with the police. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Plaintiff must allege the following elements to state a claim against a county:  (1) "an inadequate training program," (2) "deliberate indifference on the part of the County in adequately training its law enforcement officers," and (3) "the inadequate training 'actually caused' a deprivation of [Plaintiff's] constitutional rights." Merritt v. Cnty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).  To prevail on a failure to train claim, Plaintiff must "demonstrate a conscious or deliberate choice on the part of a municipality." Price v. Sery, 513 F.3d 962, 973 (9th Cir. 2008).  A plaintiff may allege "'constructive' notice where the risk was 'obvious'", but there must be "some evidence that tends to show a conscious choice." Id. at 973.  To allege deliberate indifference, Plaintiff may allege, inter alia, facts demonstrating that the County was aware of the alleged unconstitutional acts or by alleging "prior incidents of the same character that would have made [County] officials aware of the

_____

[16]/ (...continued)
continued litigation."  652 F.3d 1202, 1216 (9th Cir. 2011).

situation." <u>Mueller v. Auker</u>, 700 F.3d 1180, 1194 (9th Cir. 2012) <u>and</u> <u>Merritt</u>, 875 F.2d at 771 n. 10.

In this case, Plaintiff fails to allege facts to support his bare legal conclusions that the County acted with deliberate indifference. <u>See</u> Compl. at 10 ¶ 37, ECF No. 1. Plaintiff's allegation that the 48 Hour Rule is "obviously deficient" is a legal conclusion that is not entitled to a presumption of truth when deciding a motion to dismiss. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d at 1216.[17/]  Accordingly, the Court DENIES the County's Motion with respect to Plaintiff's claim that the County's policy violates his Fourteenth Amendment due process rights, but GRANTS the County's Motion with respect to Plaintiff's failure to train claim.  However, the Court grants leave to amend because Plaintiff may be able to allege additional facts to support such a claim.

**C. Whether Plaintiff's 28 U.S.C. § 1983 Official Capacity Claims Against Defendant Kealoha and Defendant Tenn Should Be Dismissed**

Plaintiff sued Defendant Kealoha and Defendant Tenn both individually and in their official capacities.  However, the

---

[17/] The Court observes that Plaintiff's counsel argued in his Opposition and at the July 29 hearing that the County had notice of the unconstitutionality of the 48 Hour Rule for years by means of other court decisions and incidents.  <u>See</u> Plntf.'s Opp. at 13-14.  However, the Complaint itself does not contain these alleged facts presented by Plaintiff's counsel in his Opposition and at the hearing.

Supreme Court has held that "there is no longer a need to bring official-capacity actions against local government officials . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 166-67 n. 14 (1985); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).  "Any relief sought in an official-capacity suit, either monetary or injunctive, is provided directly by the county and not the officer." Coconut Beach Development LLC v. Baptiste, Civ. No. 08-00036 SOM-KSC, 2008 WL 1867933 at *3 (D. Haw. 2008), Bilan v. City and Cnty. of Honolulu, Civ. No. 05-00690 ACK-KSC, 2006 WL 3201874 at *5 (D. Haw. 2006) (citing Graham, 473 U.S. at 167 n. 14) ("As local government units may be sued directly for damages and injunctive or declaratory relief, there is no need to also sue the individual.").  Accordingly, because the official-capacity claims against Kealoha and Tenn are duplicative of the claims asserted against the County, the Court DISMISSES without prejudice Plaintiff's federal claims against Kealoha and Tenn in their official capacities.  See Smith v. Davidson, Civ. No. 11-00498 LEK-RLP, 2012 WL 996890 at *5 (D. Haw. 2012).

**D. Whether Plaintiff's 28 U.S.C. § 1983 Claims Against Defendant Kealoha in His Individual Capacity Should Be Dismissed**

Defendant Kealoha also argues that Plaintiff fails to state a claim for supervisor liability under § 1983.  Defs.' MTD at 18, ECF No. 4-1.  According to the Ninth Circuit, there is no respondeat superior liability under § 1983.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012).  In this case, Plaintiff fails to allege sufficient facts to plausibly establish Kealoha's "knowledge of" and "acquiescence in" the specific unconstitutional conduct allegedly committed by his subordinates.  See Hydrick, 669 F.3d at 942; see generally, Compl., ECF No. 1.

Plaintiff argues that Defendant Kealoha may be held liable for implementing a policy.  Plntf.'s Opp. at 17, ECF No. 23.  The Ninth Circuit has held that supervisor liability may exist if "supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights."  Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)); see Dodds v. Richards, 614 F.3d 1185, 1199 (10th Cir. 2010).

Plaintiff cites to the Revised Charter of Honolulu §§ 6-1601 and 6-1604 (2001) to argue that Kealoha as Chief of Police

-29-

is responsible for the 48 Hour Rule.  The Revised Charter § 6-1604(d) states that the Chief of Police shall "[p]romulgate rules and regulations necessary for the organization and internal administration of the department."  However, as noted above in Section II.B., Plaintiff has not alleged sufficient facts to support the inference that the 48 Hour Rule is a policy, custom, or practice of the County.  <u>See</u> Section II.B., *supra* at 23-27.  As a result, Plaintiff fails to state a supervisory claim against Defendant Kealoha based upon the implementation of a policy.

Plaintiff also argues that Kealoha may be held liable for "setting in motion a series of acts by others which the supervisor knows or reasonably should know would result in injury."  Plntf.'s Opp. at 17 (citing <u>Castro v. Melchor</u>, 760 F. Supp. 2d 970, 993 (D. Haw. 2010)).  However, the Complaint's allegations contain no factual statements as to what acts Kealoha himself committed to set into motion his subordinates' conduct.  <u>See</u> <u>generally</u>, Compl., ECF No. 1.

Regarding the failure to train, Plaintiff must allege facts to support an inference that the "failure to train amounts to deliberate indifference to the rights of persons the police have contact with."  <u>Smith v. Davidson</u>, Civ. No. 11-00498 LEK-RLP, 2012 WL 996890 at *6 (D. Haw. 2012) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)).  "Deliberate indifference may be found where a training program is obviously deficient, and

the inadequacy of the program is likely to result in the violation of citizens' constitutional rights." Id. (citing City of Canton, 489 U.S. at 390).  While Plaintiff alleges conclusions regarding deliberate indifference, conclusory allegations are not sufficient to survive a motion to dismiss.  See Hydrick, 669 F.3d at 941.  As a result, the Court GRANTS Defendant Kealoha's Motion to Dismiss with respect to Plaintiff's supervisor liability claim and failure to train claim.  However, the Court also grants Plaintiff leave to amend.

**III. Whether Defendants Kealoha and Tenn are Entitled to Qualified Immunity**

Regarding Plaintiff's federal § 1983 claims, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011).  The Supreme Court has held that district courts "may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the more difficult question whether the purported right exists at all." Reichle v. Howards, – U.S. –, 132 S. Ct. 2088, 2093 (2012) (citing Pearson, 555 U.S. at 236).

-31-

With respect to Defendant Kealoha, the Court DENIES Kealoha's Motion to Dismiss on the basis of qualified immunity as moot because the Court concludes that Plaintiff has failed to state a claim against Kealoha.  See Section II.D., *supra* at 28-31.

While Defendant Tenn argues that he complied with the 48 Hour Rule with respect to Plaintiff's individual Fourth Amendment claim, the Court observes that McLaughlin provides examples of delays that are considered unreasonable even if a probable cause determination was issued within 48 hours. McLaughlin, 500 U.S. at 56-57, 111 S. Ct. at 1670.  At this point in time, the Court cannot determine if the alleged delay violates a clearly established right because there are factual issues regarding the promptness and nature of the delay.

With respect to the Fourteenth Amendment due process claim regarding Plaintiff's admission to bail, it appears that a federal Fourteenth Amendment due process right to admission to bail is not "clearly established law" as evidenced by the differing opinions throughout the circuits.  Compare Fields v. Henry County, Tenn., 701 F.3d 180, 185 (6th Cir. 2012) (holding in the context of posting bail that "There is no constitutional right to speedy bail."), Woods v. City of Michigan City, Ind., 940 F.2d 275, 283 (7th Cir. 1991) (Will, J., concurring) (holding that plaintiff's constitutional rights were not violated by his

arrest and overnight detention because the Eight Amendment does not guarantee "instant release for misdemeanors or any other offense"), and Collins v. Ainsworth, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within 24 hours of arrest.") with Dodds v. Richardson, 614 F.3d 1185, 1190 (10th Cir. 2010) (holding that a Fourteenth Amendment liberty interest arises once bail has been set, and that a delay may violate the due process clause) and Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009) (holding in the context of admission to bail that there is a "right to be free from continued detention after it was or should have been known that the detainee was entitled to release.").[18]

Regarding Plaintiff's Fourteenth Amendment due process claim based on Hawaiʻi law, the Court recognizes that state law does not automatically constitute clearly established law for purposes of analyzing federal qualified immunity.  See Campbell v. Burt, 141 F.3d 927, 930 (9th Cir. 1998).  However, the Ninth Circuit recognizes that state law may constitute clearly

---

[18] As noted previously, it appears that the Ninth Circuit has not addressed the issue of a Fourteenth Amendment right to speedy bail, although a district court in the Ninth Circuit has examined the question.  See Farrow v. Lipetzky, No. 12-cv-06495-JCS, 2013 WL 1915700 at *22 (N.D. Cal. 2013) (dismissing plaintiff's alleged Fourteenth Amendment claim regarding a five to thirteen day delay between his arrest and bail hearing for failure to state a claim).

established law if the state law "provides the basis for the cause of action sued upon."   Id.

In this case, as discussed above, Hawai'i law regarding Plaintiff's admission to bail forms the cause of action under the federal Fourteenth Amendment due process clause.   Therefore, Hawai'i laws governing an arrestee's right to admission to bail may constitute clearly established law regarding federal due process rights.   See Carlo v. City of Chino, 105 F.3d 493, 502 (9th Cir. 1997) (holding that state statute permitting prisoners to make three telephone calls immediately after arrest clearly established a liberty interest and defeated a claim of qualified immunity).

However, it is not apparent that Hawai'i's right to admission to bail was clearly established at the time of Officer Tenn's conduct.   According to the Supreme Court, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   Ashcroft, 131 S. Ct. at 2083.   In this case, it is not clear that every reasonable official in Defendant Tenn's position would have known that he was violating Plaintiff's right to admission to bail without unnecessary delay.

Plaintiff alleges that Defendant Tenn was notified of Plaintiff's bail by 7:45 a.m. on June 10, 2010, but Plaintiff was not released on bail until 9:15 p.m. that same day.  Compl. at 7 ¶ 28-29, ECF No. 1.  However, there is no clearly established law indicating that this time frame violated Plaintiff's rights.  In Perez, the Hawaiʻi Supreme Court stated that "[w]hat constitutes 'unnecessary delay' requires the consideration of all the facts and circumstances at the time."  111 Hawaiʻi at 396.  Plaintiff does not identify a Hawaiʻi case indicating that Defendant Tenn's conduct constituted unnecessary delay.  While the Court acknowledges that Plaintiff need not identify a case "directly on point," the precedent must "place[] the statutory or constitutional question beyond debate."  Ashcroft, 131 S. Ct. at 2083.

There is no Hawaiʻi case that places the statutory or constitutional question of the meaning of "unnecessary delay" beyond debate in this case.  While the Hawaiʻi Supreme Court in Perez concluded that a one hour delay after a one hour processing of a shoplifting arrest was unnecessary; Perez itself does not set a timeframe for Plaintiff's case because the Hawaiʻi Supreme Court adopted a finding of fact that processing for shoplifting arrests usually takes around one hour.  111 Hawaiʻi at 397.  As noted above, the Hawaiʻi Supreme Court acknowledged that the standard for "unnecessary delay" may change depending on the

nature of the case.  Id. at 396.  Accordingly, the Perez case does not define "unnecessary delay" for Plaintiff's case because Plaintiff was arrested for assault in the second degree, not shoplifting.  Plaintiff has not identified, and the Court has not found, a case placing the question of the meaning of "unnecessary delay" beyond debate for the arrest procedures identified in this case.  Thus, because there is no clearly established law that defines Plaintiff's right to be admitted to bail "without unnecessary delay," the Court GRANTS Defendant Tenn's Motion to Dismiss on the basis of qualified immunity with respect to Plaintiff's federal admission to bail claim under the Fourteenth Amendment.

**IV. Whether Plaintiff's Complaint Alleges Sufficient Facts for Injunctive and Declaratory Relief**

**A. Injunctive Relief**

Defendants argue that Plaintiff lacks standing to sue for injunctive relief.[19/]  Defs.' MTD at 16, ECF No. 4-1.  While Plaintiff was detained for around 38 hours from June 9 - 10, 2010; Plaintiff did not file his Complaint until June 1, 2012.  See generally, Compl., ECF No. 1.

In City of Los Angeles v. Lyons, the Supreme Court held that, in order to having standing for injunctive relief, a

---

[19/]  Plaintiff in his Opposition does not address Defendants' arguments regarding the requirement of standing for injunctive relief.

plaintiff must show that (1) he "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct," and (2) "the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."  461 U.S. 95, 102 (1983).  In <u>Lyons</u>, the plaintiff who suffered a choke hold from the Los Angeles police lacked standing to bring a claim for an injunction to bar the use of choke holds by the police.  <u>Id.</u> at 105-108.  The Court found that Plaintiff's harm ceased months before he filed his complaint, and he failed to show that the threat of suffering another choke hold was "real and immediate."  <u>Id.</u>

In this case, Plaintiff's alleged unconstitutional delay during his 38 hour detention was incurred over a year before he filed his Complaint against Defendants.  <u>See generally</u>, Compl., ECF No. 1.  While Plaintiff's damages claim remains viable, his allegations do not show that the threat of suffering another alleged unconstitutional detention is "real and immediate."  <u>See Lyons</u>, 461 U.S. at 102.

Similar to <u>Lyons</u>, any argument by Plaintiff that he would suffer an unconstitutional detention in the future is speculative at best.  In order for Plaintiff to suffer a repeat of the conduct alleged in the Complaint, Plaintiff in the future would need to perform some act resulting in the police concluding that there is probable cause of a crime, the police would need to

-37-

arrest him for the suspected criminal act, the police would then need to choose to detain him, and in the process of that detention the police would need to again create the alleged unreasonable delays.  Such a scenario is "hypothetical" instead of "real and immediate."  See Lyons, 461 U.S. at 105-108.

While the Supreme Court in McLaughlin stated that the plaintiffs had standing to bring an injunction against the county for unreasonable delays in probable cause determinations, the Court stated that the plaintiffs were being held in custody at the time the complaint was filed.  McLaughlin, 500 U.S. at 51. Because the plaintiffs in that case had filed a class action, the "the termination of a class representative's claim does not moot the claims of the unnamed members of the class."  Id.  However, the case before this Court is distinguishable because Plaintiff did not file his claim while he was in custody; instead, he filed his claims well after he was released from custody and the harm ceased.  See generally, Compl., ECF No. 1.  Thus, at the time that he filed his Complaint, Plaintiff did not have standing to sue for injunctive relief.  Additionally, the Court observes that Plaintiff has not obtained class certification in this case. Even if Plaintiff obtained class certification, he cannot use other members of the class to establish standing because "[s]tanding is a jurisdictional element that must be satisfied prior to class certification."  Lee v. State of Oregon, 107 F.3d

-38-

1382, 1391 (9th Cir. 1997).  "If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'"  Id.  In this case, because Plaintiff's Complaint does not contain allegations supporting a conclusion that he has standing, neither he nor the class alleged in the Complaint may present a claim for injunctive relief.

The Ninth Circuit has stated that a plaintiff may show standing if there was either (1) "at the time of the injury, a written policy, and that the injury 'stems from' that policy" or (2) "the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' federal rights.'"  Melendres v. Arpaio, 695 F.3d 990, 998 (9th Cir. 2012). Plaintiff has not alleged a written policy in his Complaint,[20] nor is it apparent that the delays are part of a "pattern of officially sanctioned behavior."  Even if Plaintiff alleges the existence of a written policy in an amended complaint, the Ninth Circuit recognizes an exception that standing should not be found

---

[20]  The Complaint itself does not contain allegations that the alleged 48 Hour Rule is a written policy as opposed to an informal custom or practice.  See generally, Compl., ECF No. 1. While Plaintiff attached a written document to his Opposition entitled "Limitations of the '48 Hour Rule'"; the Court in Section I concluded that this document should not be considered for a motion to dismiss.  See Section I, supra at 6-8. Furthermore, the Ninth Circuit has noted that the focus of a Rule 12(b)(6) motion to dismiss is the complaint; therefore, this Court may not consider new allegations contained in a memorandum in opposition to a defendant's motion to dismiss.  Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998).

if the future injury could be inflicted only in the event of future illegal conduct.  Melendres, 695 F.3d at 998 (citing Armstrong v. Davis, 275 F.3d 849, 865 (9th Cir. 2001) (abrogated on other grounds) ("standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff")).  In this case, as noted above, Plaintiff would need to commit some act giving police probable cause to arrest, charge, and admit Plaintiff to bail.  Therefore, the exception articulated in Melendres and Armstrong applies to Plaintiff's case.

Accordingly, Defendants' Motion to Dismiss with respect to Plaintiff's request for a preliminary and permanent injunction restraining Defendants from implementing the 48 Hour Rule is GRANTED, although the Court gives Plaintiff leave to amend the Complaint.

**B. Declaratory Relief**

In Hodgers-Durgin v. de la Vina, the Ninth Circuit noted that equitable relief, including declaratory relief, should be denied if the plaintiff cannot show a threat of "immediate and irreparable harm."  199 F.3d 1037, 1042 (9th Cir. 1999) (en banc).  The plaintiffs in Hodgers sought a declaratory judgment that "the roving patrol operations of the Border Patrol involve systemic violations of the Fourth Amendment to the United States Constitution."  199 F.3d 1037, 1039 (9th Cir. 1999).  Plaintiff

in this case seeks a similar ruling that the HPD's policy or practice of "arresting persons without a warrant and then unnecessarily detaining them for up to 48 hours without charges and/or admission to bail violates the constitutional and statutory rights of Plaintiff and the Plaintiff class."  Compl. at 12 ¶ 1, ECF No. 1.

        In <u>Hodgers</u>, the Ninth Circuit stated that, independent of the "case and controversy" issue, an "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiffs will be wronged again."  199 F.3d 1037, 1042 (9th Cir. 1999).  The court of appeals observed that, based on federalism concerns, "[t]he Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way."  <u>Id.</u> at 1042.  As a result, the Ninth Circuit denied injunctive and declaratory relief in <u>Hodgers</u> because the plaintiffs' argument that they were likely to be stopped again by Border Patrol was "too speculative to warrant an equitable judicial remedy . . . that would require, or provide a basis for requiring, that the Border Patrol change its practices."  <u>Id.</u> at 1044.

        In this case, Plaintiff's Complaint does not allege facts demonstrating a real or immediate threat that Plaintiff

-41-

would be detained again under the 48 Hour Rule.  Accordingly, the Court DISMISSES Plaintiff's request for declaratory judgment, but grants leave to amend.

**V. Plaintiff's Claims Under the Hawaiʻi Constitution**

Plaintiff's Complaint does not contain a separate cause of action for violations of the Hawaiʻi Constitution.  Within Plaintiff's First Cause of Action - 42 U.S.C. § 1983, Plaintiff alleges that "Plaintiff and other persons similarly situated have been subjected to an unreasonable seizure and/or denied due process of law in violation of rights guaranteed to them by . . . the Constitution and laws of the State of Hawaiʻi."  Compl. at 8 ¶ 34, ECF No. 1.

The Court observes that Section 1983 only provides a remedy for violations of certain federal rights.  Alston v. Read, 678 F. Supp. 2d 1061, 1074 (D. Haw. 2010) (reversed on other grounds by Alston v. Read, 663 F.3d 1094 (9th Cir. 2011)). Violations of state constitutions "are not cognizable under Section 1983."  Id.; see Oyama v. Univ. of Haw., Civ. No. 12-00137 HG-BMK, 2013 WL 1767710 at *13 (D. Haw. 2013).

Additionally, Hawaiʻi does not have a statute or other case-law equivalent to 42 U.S.C. § 1983.  Alston v. Read, 678 F. Supp. 2d 1061, 1074 (D. Haw. 2010) (citing Mow by Mow v. Cheeseborough, 696 F. Supp. 1360, 1365 (D. Haw. 1988)).  The Hawaiʻi courts thus far have declined to recognize a private

cause of action for damages for violations of rights guaranteed under the state constitution.  Galario v. Adewundmi, Civ. No. 07-00159 DAE-KSC, 2009 WL 1227874 at *11 (D. Haw. 2009) (reversed on other grounds by Galario v. Adewundmi, 2013 WL 3157511 (9th Cir. 2013)) (citing Makanui v. Dep't. of Educ., 6 Haw. App. 397, 403 (1986)).  Plaintiff does not cite to any legal authority in support of such a claim, and this Court declines to infer that such a cause of action exists under the Hawaiʻi Constitution. See also Gonzalez v. Okagawa, Civ. No. 12-00368 RLP, 2013 WL 2423219 at *10 (D. Haw. 2013).

Neither does Plaintiff qualify for declaratory relief under Hawaiʻi Revised Statutes § 632-1, which states as follows:

> Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.

In this case, the declaratory relief sought by Plaintiff will not "terminate the uncertainty or controversy giving rise to the proceeding." H.R.S. § 632-1.  The crux of Plaintiff's claim is that he was detained for an unreasonable

period of time; a declaration regarding the 48 Hour Rule would not resolve the controversy of whether Plaintiff's detention of approximately 38 hours was reasonable or unreasonable.  For example, assuming arguendo that the Court granted Plaintiff's request for a declaratory judgment that the 48 Hour Rule is unconstitutional under the Hawai'i Constitution, such a ruling does not determine whether the policy or practice caused the alleged unreasonable detention or if the detention itself was even unreasonable.  See F.K. ex rel. A.K. v. Dep't of Educ., Civ. No. 12-00136 ACK-RLP, 2012 WL 5438989 at *5 (D. Haw. 2012) (holding that declaratory relief was inappropriate because the "declaration would merely decide one element of [defendant's] negligence claim" against a third party).

Regarding injunctive relief, the Court previously determined in Section IV.A. that Plaintiff does not have Article III standing for such relief in federal court.  See supra at 36-40.  Federal law, not state law, determines whether a plaintiff has standing to sue for injunctive relief in a federal court. See Hollingsworth v. Perry, – U.S. –, 133 S. Ct. 2652, 2667 (2013) (holding that standing in federal court is determined by federal law instead of state law).  Thus, because Plaintiff filed his state law claims in federal court, federal rules of standing govern Plaintiff's state law claims for injunctive relief.  Id. As a result, the state law claims for injunctive relief must be

dismissed because according to federal law, Plaintiff lacks standing to obtain injunctive relief.  See Section IV.A., *supra* at 36-40.

Accordingly, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's claims regarding the alleged violations of the Hawai'i Constitution because Plaintiff does not have a remedy for such claims in federal court.

## VI. Plaintiff's State Law Tort Claims

### A.  Whether Plaintiff Fails to Allege a State Law Claim Because of the Qualified or Conditional Privilege Doctrine

Defendants Kealoha and Tenn argue that Plaintiff's state law claims should be dismissed because Plaintiff fails to properly plead the malice requirement to overcome the conditional or qualified privilege defense.[21]  Under the doctrine of conditional or qualified privilege, nonjudicial government officials are shielded from liability for their tortious actions committed during the performance of their public duties.  See Long v. Yomes, Civ. No. 11-00136, 2011 WL 4412847 at *6 (D. Haw. 2011).  In order for a plaintiff to prevail in a state tort action against a nonjudicial government official, the plaintiff must "allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise

---

[21]  Plaintiff in his Opposition does not address Defendants' arguments regarding this claim.

proper purpose." Id. (quoting Edenfield v. Estate of Willets, Civ. No. 05-00418, 2006 WL 1041724 at *11-12 (D. Haw. 2006). The Hawaiʻi Supreme Court defines "malice" as "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." Id. (quoting Awakuni v. Awana, 165 P.3d 1027, 1041 (Haw. 2007)) (internal quotation marks omitted).

In this case, Plaintiff merely alleges a conclusory statement that "Defendants acted with malice."[22] Compl. at 11, ¶ 45, and 12, ¶ 48. However, Plaintiff's factual allegations providing a timeline of events to illustrate delay do not provide a factual basis to support his legal conclusion that Defendants Kealoha and Tenn acted with malice. See Compl. at 5-8. In Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009), the Supreme Court found that the plaintiff's general allegations of discriminatory intent did not satisfy the requirements of Rule 8.[23] Thus,

_____

[22] The Court notes that, at the hearing on July 29, 2013, Plaintiff's counsel argued that the officers had knowledge of repeated constitutional violations from the 48 Hour Rule, and that this "knowledge" demonstrated malice regarding Plaintiff's detention. While the Court makes no determination as to whether malice would exist under the facts presented by Plaintiff's counsel; the Court observes that, in any event, these facts were not alleged within the Complaint itself.

[23] The Supreme Court also found that Rule 9, which allows plaintiffs to allege "malice, intent, knowledge, and other conditions of a person's mind" generally in fraud or mistake cases, did not allow plaintiffs to make "conclusory statements without reference to its factual context." Iqbal, 556 U.S. at
(continued...)

Plaintiff's allegation of malice as currently pled is not
sufficient, and the state law claims, namely his second, third,
and fourth causes of action, are DISMISSED without prejudice as
to all Defendants.[24/]   However, because Plaintiff may be able to
provide further allegations to address this defect, the Court
grants leave to amend.

Notwithstanding the above conclusion, the Court
examines each state law claim in turn to provide guidance for any
future amended complaint submitted by Plaintiff.

**B.  Whether Plaintiff States a Claim for Negligent
Supervision and Training Against Defendant Kealoha and the
County**

---

[23/] (...continued)
686.

[24/] Under Hawaiʻi law, the County may be liable for the torts
of its employees under the theory of respondeat superior.  See
Silva v. City and Cnty. of Honolulu, at *13 (D. Haw. 2013)
(citing Wong-Leong v. Hawaiian Independent Refinery, Inc., 76
Hawaiʻi 433, 879 P.2d 538, 543 (Haw. 1994)).  Because Plaintiff's
allegations in the Complaint are based upon specific acts
allegedly committed by Defendant Tenn (See Compl. at 2-8, ¶¶ 1-
31), the Court assumes that Plaintiff attempts to establish
County liability under the theory of respondeat superior.
Accordingly, dismissal of the state tort law claims against
Defendants Kealoha and Tenn also means that the state tort law
claims against the County should be dismissed.  See Silva v. City
and Cnty. of Honolulu, Civ. No. 11-00561 LEK-RLP, 2013 WL 2420902
at *20 (D. Haw. 2013) (granting summary judgment to the County
because the County's police officer employee was protected by
conditional privilege); Dawkins v. City and Cnty. of Honolulu,
Civ. No. 10-00086 HG-KSC, 2011 WL 1598788 at *19 (D. Haw. 2011)
(citing Reed v. City and Cnty. of Honolulu, 873 P.2d 98, 107
(Haw. 1982)) ("If a government employee is immune from suit, the
governmental employer is also immune from suit.").

Under Hawai'i law, the tort of negligent supervision has been explained as follows:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> > (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> >
> > (ii) is using a chattel of the master, and
>
> (B) the master
>
> > (i) knows or has reason to know that he has the ability to control his servant, and
> >
> > (ii) knows or should know of the necessity and opportunity for exercising such control.

Dairy Road Partners v. Island Ins. Co., Ltd., 92 Hawai'i 398, 427, 992 P.2d 93, 122 (2000).

Defendants argue that Plaintiff fails to allege facts indicating that Defendant Tenn acted outside the scope of his employment.[25/] Defs.' MTD at 10, ECF No. 4. The Court agrees that Plaintiff's negligent supervision claim as currently stated fails to meet the pleading standard under Iqbal because there are no factual allegations that would support Plaintiff's legal conclusion. 556 U.S. at 678-80; see also Thourot v. Tanuvasa,

---

[25/] Plaintiff in his Opposition does not address Defendants' arguments regarding this claim.

Civ. No. 11-00032, 2012 WL 474150 at (D. Haw. 2012) (court dismissed negligent supervision claim because of plaintiff's failure to present factual allegations that defendants acted outside the scope of employment).

Additionally, Plaintiff also fails to allege facts supporting his bare legal conclusion that Defendant Kealoha or the County "knew or should have known about the necessity and opportunity to exercise control" over the officers.  Compl. at 11 ¶ 41, ECF No. 1; see Otani v. City and Cnty. Of Haw., 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998).  These defects should be addressed if Plaintiff decides to file an amended complaint.

## C. Whether Plaintiff States a Claim for Negligence Against All the Defendants

Under Hawaiʻi law, the elements for negligence are as follows: (1) "A duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks;" (2) "A failure on the defendant's part to conform to the standard required: a breach of duty;" (3) "A reasonably close causal connection between the conduct and the resulting injury;" and (4) "Actual loss or damage resulting to the interests of another." Tseu ex rel. Hobbs v. Jeyte, 88 Hawaii 85, 91 (1998).

Defendants argue that Plaintiff fails to allege the elements of duty and damages with sufficient particularity.  See

-49-

Compl. at 11, ¶ 43-45, ECF No. 1.   While the Court acknowledges that Plaintiff's Complaint barely meets the plausibility pleading standard under Iqbal; the Hawaiʻi Supreme Court has "repeatedly recognized a duty owed by all persons to refrain from taking actions that might *forseeably* cause harm to others."   Taylor-Rice v. State, 979 P.2d 1086, 1097 (1999); see also Long v. Yomes, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847 at *7 (D. Haw. 2011).

In this case, Plaintiff alleges specific acts committed by Defendant Tenn that allegedly caused Plaintiff harm by delaying his release.   Compl. at 2-8, ¶¶ 1-31, ECF No. 1. Because the County and Defendant Kealoha's liability is premised on Defendant Tenn's actions, it appears that Plaintiff attempts to hold them responsible via the doctrine of respondeat superior. As a result, the Court concludes that Plaintiff barely alleges a negligence claim against Defendant Tenn, and in turn Defendants Kealoha and the County.[26/]

However, while the negligence allegations barely meet the pleading requirements under Iqbal, the Court dismisses the negligence claim against Defendant Tenn on the basis of conditional or qualified privilege as discussed above (*supra* at 45-47).   As a result, the negligence claim is also dismissed with

---

[26/]   The Court instructs Plaintiff that the negligence claim should be amended to clarify the basis for relief.   The claim is vague, bordering on dismissal pursuant to Twombly and Iqbal, and the Complaint must be amended for other purposes in any event.

respect to Defendants Kealoha and the County because they cannot be held vicariously liable if Defendant Tenn is not liable.  <u>See</u> <u>Silva v. City and Cnty. of Honolulu</u>, Civ. No. 11-00561 LEK-RLP, 2013 WL 2420902 at *20 (D. Haw. 2013) (granting summary judgment to the City because the City's police officer employee was protected by conditional privilege); <u>Dawkins v. City and Cnty. of Honolulu</u>, Civ. No. 10-00086 HG-KSC, 2011 WL 1598788 at *19 (D. Haw. 2011) (citing <u>Reed v. City and Cnty. of Honolulu</u>, 873 P.2d 98, 107 (Haw. 1982)) ("If a government employee is immune from suit, the governmental employer is also immune from suit.").

### D. Whether Plaintiff States a Claim for Negligent Infliction of Emotional Distress ("NIED")

The Hawai'i Supreme Court has stated that a NIED claim that fails to allege physical injury as part of a plaintiff's damage is "nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed "utilizing ordinary negligence principles." <u>Doe Parents No. 1 v. State of Haw., Dep't. Of Educ.</u>, 100 Haw. 34, 69, 58 P.3d 545, 580 (2002).  However, in order to state a claim for NIED under Hawai'i law, Plaintiff must allege "some predicate injury either to property or to another person in order [for] himself or herself to recover for negligently inflicted emotional distress." <u>Id.</u>, 100 Haw. at 69-70, 58 P.3d at 580-81.  Thus, "an NIED claimant must establish, incident to his or her burden of proving

actual injury (i.e., the fourth element of a generic negligence claim), that someone was physically injured by the defendant's conduct, be it the plaintiff . . . or someone else."[27/]   Id.

The Hawaiʻi Supreme Court has recognized exceptions to the general rule that a claimant must establish physical injury to a person or property; such exceptions are granted in cases where the "circumstances . . . guarantee the genuineness and seriousness of the claim."  Doe Parents No. 1, 100 Haw. at 70, 58 P.3d at 581 (listing the following exceptions:  (1) "actual exposure to HIV-positive blood," (2) "mishandling of corpses," (3) "placing a child in an environment where he or she is left unsupervised with an accused child molester"); see also Kahoʻohanohano v. Dep't of Human Servs., 117 Hawaiʻi 262, 288-89, 178 P.3d 538, 564-65 (2008) (recognizing NIED claim for father and grandfather who witnessed child's physical suffering after department failed to protect child from abuse).  However, these cases all involve "some kind of physical touching, harm, injury, or future threat thereof."  Galario v. Adewundmi, Civ. No. 07-00159 DAE-KSC, 2009 WL 1227874 at *10 (D. Haw. 2009) (reversed on other grounds by Galario v. Adewundmi, 2013 WL 3157511 (9th Cir. 2013)).

---

[27/]   Plaintiff in his Opposition does not address Defendants' arguments regarding this claim.

In this case, Plaintiff's NIED count in the Complaint does not allege that any person or property was physically injured by Defendants' conduct.  <u>See</u> Compl. at 12, ¶¶ 46-48.  Nor does the Complaint allege facts where the Court could infer that one of the exceptions provided by the Hawaiʻi Supreme Court would apply to the present case.  <u>Id.</u>  While the Court dismisses Plaintiff's Fourth Cause of Action for Negligent Infliction of Emotional Distress based upon the conditional and qualified privilege analysis explained above; these defects should also be addressed if Plaintiff decides to file an amended complaint.  <u>See</u> <u>Tseu ex rel. Hobbs v. Jeyte</u>, 88 Hawaii 85, 91 (1998) (dismissing NIED claim for failure to allege physical injury).

### CONCLUSION

For the foregoing reasons, the Court

(1) GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's § 1983 Fourth Amendment systemic claims against the County, Kealoha, and Tenn regarding the alleged policy of the 48 Hour Rule and dismisses the claims WITHOUT PREJUDICE, GRANTS Defendant County and Kealoha's Motion to Dismiss with respect to Plaintiff's individual Fourth Amendment claim regarding the alleged delay in Plaintiff's probable cause determination and dismisses the claims WITHOUT PREJUDICE, but DENIES Defendant Tenn's Motion to Dismiss with respect to Plaintiff's individual Fourth Amendment claim against Defendant Tenn in his individual

capacity regarding the alleged delay in Plaintiff's probable cause determination because Plaintiff states a claim and the allegations in the Complaint do not indicate that Defendant Tenn is entitled to qualified immunity at this stage in the proceedings;

(2) GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's Sixth Amendment and Fourteenth Amendment Due Process claims against all Defendants regarding the alleged delay between Plaintiff's arrest and formal charges and dismisses the claims WITHOUT PREJUDICE;

(3) GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's Eighth Amendment claims against all Defendants regarding an alleged delay in his admission to bail and dismisses the claims WITH PREJUDICE;

(4) GRANTS Defendant Tenn's Motion to Dismiss with respect to Plaintiff's § 1983 Fourteenth Amendment due process claim regarding his admission to bail on the basis of qualified immunity and dismisses the claim WITHOUT PREJUDICE.

(5) GRANTS Defendant County's Motion to Dismiss Plaintiff's Fourteenth Amendment due process claim regarding his admission to bail on the basis of failure to allege a Monell claim and dismisses the claim WITHOUT PREJUDICE;

(6) GRANTS Defendant Kealoha's Motion to Dismiss Plaintiff's Fourteenth Amendment due process claim regarding his

-54-

admission to bail on the basis of failure to allege a supervisor liability or failure to train claim, and dismisses these claims WITHOUT PREJUDICE.

(7) GRANTS Defendant County's Motion to Dismiss Plaintiff's § 1983 <u>Monell</u> claims with respect to the policy, practice, or custom claim and failure to train claim and dismisses the claims WITHOUT PREJUDICE;

(8) GRANTS Defendants Kealoha's and Tenn's Motion to Dismiss Plaintiff's § 1983 claims against them in their official capacities and dismisses the claims WITHOUT PREJUDICE;

(9) GRANTS Defendant Kealoha's Motion to Dismiss Plaintiff's § 1983 claims regarding supervisor liability and failure to train and dismisses the claims WITHOUT PREJUDICE;

(10) DENIES as moot Defendant Kealoha's Motion to Dismiss Plaintiff's § 1983 claims against him in his individual capacity on the basis of qualified immunity;

(11) GRANTS Defendants' Motion to Dismiss Plaintiff's request for injunctive and declaratory relief under § 1983 and Hawaiʻi law and dismisses the claims WITHOUT PREJUDICE;

(12) GRANTS Defendants' Motion to Dismiss Plaintiff's claims under the Hawaiʻi Constitution and dismisses the claims WITHOUT PREJUDICE;[28]

---

[28] As noted in <u>Semtek Intern. Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 505-06, 121 S. Ct. 1021, 1027 (2001), the fact that
(continued...)

(13) GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's Second Cause of Action regarding Negligent Training/Supervision and dismisses the claims WITHOUT PREJUDICE;

(14) GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's Third Cause of Action regarding Negligence and dismisses the claims WITHOUT PREJUDICE; and

(15) GRANTS Defendants' Motion to Dismiss with respect to Plaintiff's Fourth Cause of Action regarding Negligent Infliction of Emotional Distress and dismisses the claims WITHOUT PREJUDICE.

The Court also GRANTS Plaintiff leave to file an amended complaint within thirty (30) days of the date of this Court's written order to address the rulings set forth in this order.  The Court CAUTIONS Plaintiff that, if he fails to timely file an amended complaint, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice.  Further, if the amended complaint fails to address the defects identified in this Order, the Court may dismiss such claims with prejudice.

---

[28]/ (...continued)
this Court dismisses the state constitutional law claims has no bearing as to whether Plaintiff may file such claims in state court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, August 20, 2013.



_____
Alan C. Kay
Sr. United States District Judge


Ilae v. Tenn et al., Civ. No. 12-00316 ACK-KSC: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT.

–57–